## HARBAGE v TRACY et

Ohio Common Pleas, Franklin Co

No 150990. Decided December 28, 1936

**See also 24 Abs 553.**

Gilbert Bettman, Cincinnati, and Agnes B. Dickinson, Columbus, for plaintiff.

Clarence Laylin, Columbus, for members of the House of Representatives, Paul Gingher, Columbus, for Dwight Matchett, Clerk of the Senate, and, by special appointment of the Attorney General's office, representing Ferguson, the Auditor, in a limited capacity.

### ORAL DECISION

Of Hon. Charles J. Leach, Judge on application for temporary injunction.

THE COURT: This case is before this court this morning, as I suggested when court convened, on an application for a temporary injunction. Prior hereto a preliminary or temporary restraining order into a temporary injunction on the theory that the State Auditor has taken the position that he will not pay this mileage which is involved in this case. The letter is not an answer filed in Court, it is a letter addressed to Honorable John W. Bricker, Attorney General, and states that:

"In reply to your letter of December 15th, re Harbage against Tracy, Auditor of State, Court of Common Pleas, No 150990, would advise that I will comply with the recommendation made in said letter, to wit:

'It is my advice to you that you are perfectly justified and it is your duty to refuse to pay said alleged mileage unless and until you are so ordered to do by a court of competent jurisdiction' and that no warrant will be issued in pay-

ment of the mileage of members of the House of Representatives of the General Assembly of Ohio between July 27th, 1936, and December 5, 1936, unless and until I am ordered so to do by a court of competent jurisdiction. In view of the foregoing statements, which I shall adhere to and which I would be willing to incorporate in an answer filed in my behalf in said action, I respectfully request your further consideration of the question of representation of this office therein."

The original petition states that plaintiff has reason to believe and does believe that unless the restraining order herein requested is granted, the defendant will pay to the members of the General Assembly these allowances.

The present petition, may I see that? This has been filed, as I understand it?

Mr. Bettman: Yes, It has been filed.

Miss Dickinson: Yes, this morning, Your Honor.

The Court: Well, it simply makes a similar allegation as I read it here. However, the allegation of the original petition was the allegation upon which the temporary restraining order was originally granted. Now, there seems to be, so far as I can understand it, no denial that as matters then stood, so far as these pleadings are concerned, it is alleged positively that it would have been paid, and that being true—

Mr. LAYLIN: Which pleading are you referring to now, Your Honor?

The Court: The original.

Mr. Laylin: I don't think that is a positive averment.

The Court: Well, at any rate—

Mr. Laylin: However, I will pass that.

The Court: In the absence of denial of that fact, while the court would like very much, of course, to expedite this matter and has no desire that this court should pass upon it rather than the Supreme Court, while it appeals to the court's desire, does not quite appeal to what he thinks is his judicial duty in the matter in view of the facts as they seem to present themselves. As I say, a preliminary injunction was granted here by another member of this court originally and then this branch of the court continued it until this morning for this hearing on the application for a temporary injunction.

Now, what does the court have before it this morning on this application? It should be made clear that this is not a final hearing not a final determination of the action.

Everybody, of course, understands that. And what is usually necessary for the granting of a temporary injunction? It is, I think, a prima facie showing that injury will or would have been done without the granting of that injunction.

I don't think it is necessary for the court to go into the question at length upon the constitution, which has already been adverted to, where by the provisions of Section 31 of Article 2 it is provided that the members and officers of the General Assembly shall receive a fixed compensation to be prescribed by law and no other allowance or perquisites, either in the payment of postage or otherwise, and no change in their compensation shall take effect during their term of office.

And then we have Section 50, which carries into effect or prescribes the salary of members of the General Assembly, salary and compensation a salary of one thousand dollars a year during this term of office, which salary for such term shall be paid in the following manner: Two hundred dollars in monthly installments during the first session of such term and the balance of such salary for such term at the end of such session. Each member shall receive the legal rate of railroad transportation each way for mileage once a week during the session from and to his place of residence and by the most direct route of public travel to and from the seat of government, to be paid at the end of each regular or special session. If a member is absent without leave or is not excused on his return, there shall be deducted from his compensation the sum of ten dollars for each day's absence.

Then to be read in connection with that Section 50 is Section 54:

"The President of the Senate and the Speaker of the House of Representatives shall ascertain the number of days' attendance of each member and officer of the respective Houses during the session, the number of miles travel of each member to and from the seat of government, and certify such attendance and mileage and the amount due therefor to the auditor of State."

Now, what does that language of Section 53 there mean? I should think that it meant just precisely what it says.

Mr. Laylin: Will you read Section 53 in connection with it?

The Court: Oh, yes, that has to do with attendance. Now, there are two types of compensation which the member of the General Assembly receives, namely, the one thousand dollars per year and the mileage. Now, this salary of one thousand dollars per year is subject to some deduction in case of absences, because the section provides that if a member is absent without leave or is not excused on his return, there shall be deducted from his compensation the sum of $10.00 for each day's absence, so that I take it means just what it says, and then 52 provides what that attendance shall be, includes all days from the opening to the close of the session except such days of absence as are not excused by the House to which the member or officer belongs. Then Section 54 is as I have read it, the President of the Senate and the Speaker of the House shall ascertain the number of days of attendance of each member and officer of their respective Houses.

When we get down to this matter of the sanctity of a legislative journal, as it seems to me, that is a thing relative to the enactment of law, the presence of a quorum and all that sort of thing, but Section 54 has nothing whatsoever to do with legislation or the act of a general assembly; it is merely a ministerial, administrative function of two officers acting in the capacity as a timekeeper to do certain things, just like any other timekeeper. The President of the Senate and Speaker of the House merely ascertain the number of days attendance of each member and officer of the respective houses during the session. Well, that is a simple thing to do. How many days was he present? That is all there is to it, except you count in that those days when he was not present when he was excused from being present by the house to which he belonged. Then the second thing that the President of the Senate and the Speaker of the House shall do is to ascertain the number of miles travel of each member to and from the seat of government and certify both the attendance and mileage and the amount due therefore to the Auditor of State.

Now it won't do to read Section 50 alone, it seems to me, but you must read it with Section 54 which places in the hands of two officers, not in their legislative capacity, but simply in their ministerial capacity, the same as any other head of a department certifies the attendance of his employees if he happens to be the head of that department, and the statute says he shall certify the number of miles of travel of each member to and from the seat of government and the amount due therefor.

Now, there is no matter of legislation, it doesn't seem to the court, involved there at all. It in't a question involving any passage of any act nor is it legislative in character. It is ministerial in character, simply ascertaining a simple act in a simple way. There is nothing mysterious about the use of this language as the court now sees it. Of course, the court is not passing on this case finally, only for the purposes of a prima facie appearance upon these statutes and prima facie showing. If upon further inquiry in the final inquiry and exhaustive examination, if that be necessary, is entered into.

Now, what does that mean? The Speaker of the House shall ascertain the number of miles of travel of each member to and from the seat of government and certify the amount due therefore to the Auditor of State. It would be suggested that if that is to be interpreted in the plain, common sense meaning which the words themselves import, that there might be some constitutional difficulty about it because the constitution provides that the members shall receive a fixed compensation to be prescribed by law and no other allowances or perquisites, either in the payment of postage or otherwise, that these fictitious sessions, if they be such, would have to be given full credence in order that that constitutional section might be complied with. But certainly there is nothing unconstitutional about that part of Section 50 which requires a deduction in pay for absence. That is fixed; it fixes it on the basis of actual attendance at the session plus the days where they are not actually present, but where the House of which they are a member excuses such member. There can't be any constitutional question on that subject, nor do I see how there could be any constitutional invalidity arise if Section 54 was given its plain, clear and, it seems to this court, definite meaning. The speaker of the House shall ascertain the number of miles of travel of each member to and from the seat of government and certify the amount due therefor. An ordinary, ministerial, administrative function to be performed.

All branches of government, whether it be executive, legislative, or judicial, are to be guided and controlled by law, and I think that the ruling of the court will be that the temporary injunction will be continued, or granted, rather, because the other one was a temporary restraining order, and the same bond. The reason I do

that is because there has been no statement or claim made that the allegations of the original petition as they then stood were not true. Now, if a showing was made here or can be made, that this injunction was granted on the false theory, that the auditor never had taken any steps to pay and never did intend to pay, why then, of course, there is no occasion for the injunction. But the petition says that he did and that has not, as I see it, been denied as of that time.